```
1                    IN THE UNITED STATES DISTRICT COURT

2                    IN AND FOR THE DISTRICT OF DELAWARE

3                               - - -
     INFINEUM USA L.P.,
4                                        :     CIVIL ACTION NO.
              Plaintiff,                 :
5                                        :
              v.                         :
6                                        :
     CHEVRON ORONITE COMPANY LLC,        :
7                                        :     18-323-LPS-CJB
              Defendant.                 :
8                               - - -

9                          Wilmington, Delaware
                          Tuesday, February 5, 2019
10                            Motion Hearing

11                              - - -

12   BEFORE:          HONORABLE LEONARD P. STARK, Chief Judge

13   APPEARANCES:                - - -

14
                  GIBBONS P.C.
15                BY:  CHRISTOPHER VICECONTE, ESQ.

16                    and

17                GIBBONS P.C.
                  BY:  CHRISTOPHER H. STRATE, ESQ.
18                    (Newark, New Jersey)

19                       Counsel for Plaintiff

20
                  MORRIS NICHOLS ARSHT & TUNNELL, LLP
21                BY:  STEPHEN KRAFTSCHIK, ESQ.

22                    and

23

24
                                  Brian P. Gaffigan
25                                Registered Merit Reporter
```

1    APPEARANCES:   (Continued)

2
                    PAUL HASTINGS, LLP
3                   BY:   NAVEEN MODI, ESQ.,
                          DANIEL ZEILBEREGER, ESQ., and
4                         MICHAEL A. WOLFE, ESQ.
                          (Washington, District of Columbia)
5
                            Counsel for defendant
6

7

8

9

10

11                              - oOo -

12                    P R O C E E D I N G S

13              (REPORTER'S NOTE:  The following oral argument

14   hearing was held in open court, beginning at 9:30 a.m.)

15              THE COURT:  Good morning.

16              (The attorneys respond, "good morning, Your

17   Honor.")

18              THE COURT:  I'll have you put your appearances

19   on the record.

20              MR. VICECONTE:  Good morning, Your Honor.  Chris

21   Viceconte of Gibbons for plaintiff Infineum USA, LP.  With

22   me today are Christopher Strate, also of Gibbons, admitted

23   pro hac vice, as well as Jacob Levine, in-house counsel for

24   Infineum is with us today.

25              THE COURT:  Okay.

```
 1              MR. VICECONTE:  With Your Honor's permission,
 2    Mr. Strate will be presenting for us.
 3              THE COURT:  That's fine.
 4              MR. VICECONTE:  Thank you.
 5              THE COURT:  Thank you.
 6              Good morning.
 7              MR. KRAFTSCHIK:  Good morning, Your Honor.
 8    Stephen Kraftschik from Morris Nichols for defendant Chevron
 9    Oronite.  I have Levine Modi, Daniel Zeilberger, and Michael
10    Wolfe from Paul Hastings.
11              THE COURT:  Welcome to you all as well.
12              So we're here for the defendant's motion to
13    stay, so we will hear from defendants first.
14              MR. MODI:  Good morning, Your Honor.  May it
15    please the Court.
16              This Court should stay this case because all of
17    the factors that this Court normally considers for a stay
18    motion favor a stay:
19              A stay will simplify the issues this case.
20              This case is in its early stages, not much has
21    happened.  And then,
22              Finally, a stay will not unduly prejudice
23    Infineum.  I'm happy to --
24              THE COURT:  Yes, you previously told us that the
25    parties are competitors and often compete for the same
```

business.  That is true, isn't it?

MR. MODI:  That is true, Your Honor, but there are other competitors in the market as well.  The two parties are not the only two competitors, and I think Your Honor is getting to the undue prejudice prong.  And as Your Honor is well aware, there are actually several subfactors that are considered when you look at that prong, but even if you just focus on the relationship of the parties, which is what Your Honor is getting to, we think that also favors a stay here.

THE COURT:  That puzzled me.  So I could see an argument that maybe there is not unfair prejudice to them.  I shouldn't automatically say because you are competitors we don't stay, but how is it that the relationship actually disfavors a stay?

MR. MODI:  Let me explain that, Your Honor.  The reason for that here is, I think they are trying to take a bright line position because we're competitors.  The *454 Lifesciences* case from this Court tells us otherwise.

Then, secondly, I think the reason the relationship doesn't matter here is they waited more than 12 years to file this lawsuit.

As Your Honor is aware if you look at my declaration -- and that is at DI 50, Exhibit A -- they had actually informed us that we were infringing this patent

1    back in 2005, yet they waited more than 12 years to file

2    this lawsuit.

3              Then also on top of that, if you actually go

4    -- you don't need to go beyond their pleading.  In their

5    complaint, that is the amended complaint, DI 16 at

6    paragraph 37, they admitted that Oronite has been aware of

7    infringement at least since 2012, yet they waited until

8    last year to sue us.

9              I think if you look at a case like this, and

10   again, for example, the *454 Lifesciences* case from this

11   court acknowledges where you have a case such as this,

12   damages can compensate them.  There is no reason that

13   damages cannot compensate them for any alleged infringement

14   if this Court were to stay this case for a short period of

15   time.

16             THE COURT:  How long of a stay are you looking

17   for?  It's unclear to me if you want a stay pending appeal

18   as well.

19             MR. MODI:  Your Honor, we would certainly be

20   fine with a stay through the final decision.  I would

21   suggest that the parties revisit the stay question at that

22   time.  As Your Honor is aware, the final decision is going

23   to come in November of this year.  So we're only asking

24   for a nine month stay.  And I think when you look at the

25   prejudice factor, I think the key is whether there would be

1    undue prejudice to Infineum; and I just don't think that is

2    the case.  They haven't shown that over the last few years.

3    The market has changed such that there would be, all of a

4    sudden, undue prejudice to them when they waited so long to

5    file this lawsuit.

6              THE COURT:  Yes, let's talk about this 5 and 12.

7    I'm trying to sort through that.  First, if I think that the

8    PTAB is trying to say only 5 and 12 are likely to survive, and

9    I take it you don't agree that is what they're signaling, but

10   if I think that, how, if at all, does that affect the analysis

11   today?

12             MR. MODI:  Your Honor, from our perspective, it

13   does not affect the analysis.  Again, if you look at this

14   Court's case law, it's very clear that a stay, when you look

15   at the simplification of the issues factor, you don't have

16   to dispose of, we don't have to get rid of the entire case.

17   At least the other 18 claims would be in play in the IPR.

18              Again, if you look at this court's case law, for

19   example, the *Boston Scientific v Cook* case where there were

20   10 out of the 12 claims were instituted, two of the claims

21   were not instituted, yet this Court granted stay.  And then

22   I think we also -- and they actually brought this in even

23   though the PTAB did not rely on that, the *SAS* case.  And I

24   think the *SAS* case actually helps us here.  The reason for

25   that is, even if you assume, which was the assumption in

1    Your Honor's question that 5 and 12 are out of the case,

2    even if you take that, their, at a minimum, part of the

3    review.

4             So we will get a final decision from the PTAB

5    either saying that Oronite has not established its burden

6    with respect to invalidity or it will actually, it may very

7    well be the case that even though they're part of the case

8    and they may not have established the reasonable likelihood

9    prong, which is at most the only thing that they can get,

10   we don't, we wouldn't agree with that, there have been cases

11   actually, Your Honor, post-*SAS* where claims like 5 and 12,

12   assuming they were not part of the institution decision but

13   were put into the proceeding because of *SAS*.  PTAB has

14   actually flipped in those cases in the final decision.  I

15   personally experienced that myself where we were able to

16   convince the PTAB at the final decision stage that those

17   claims are in fact invalid.

18             So we think even if those claims were out of the

19   case, we don't think -- we don't agree with that.  We think

20   if you look at the errata, it's pretty clear the PTAB called

21   it an errata and they'd called it errata because they agree

22   those claims were part of the review and are part of the

23   review.

24             THE COURT:  So what, from the defendant's

25   perspective, the case that only goes forward on two claims,

1    particularly 5 and 12 versus possibly all 20 of the claims

2    in the patent, how different does that case look in terms of

3    discovery, products at issue, the complexity of the case?

4              MR. MODI:  Your Honor, from our perspective, we

5    think, as you are also aware, we have a motion to dismiss

6    pending.  Part of the issue we have in this case is we

7    actually don't know what they're accusing us of infringement.

8    So from a claim 5 and 12 perspective, those claims, they

9    have never highlighted to us until this motion to stay, that

10   they're actually important to them.  If you look at their

11   complaint, only claim 1 is mentioned in their complaint.  All

12   of a sudden, they mention claims 5 and 12.  They have very

13   specific limitations in terms of what they require as being,

14   as required for part of the product, for the product to

15   infringe.

16             So we think this Court should stay the entire

17   case, and it shouldn't sever claims 5 and 12 as Your Honor

18   seems to be suggesting because we think that would actually

19   prejudice us and that we would have to start over again if

20   any other claims survives.

21             THE COURT:  If I do stay and the case comes

22   back to us, you're not I assume saying that there will be no

23   invalidity case left.  There is some other invalidity that

24   you might proceed on that you wouldn't be estopped on.  Is

25   that right?

1          MR. MODI:  That's right, Your Honor.  We would

2    certainly take the estoppel that comes under the statutes.

3    And with respect to the other issues that are in the case,

4    obviously we'll see where we are, depending on what claims,

5    if any, survive.  We will take that up with the Court at

6    that time.

7          THE COURT:  But I may still, if the case came

8    back and they still have to deal with invalidity.

9          MR. MODI:  Of course, Your Honor.  That is no

10   different from any other case, as you know, from when a

11   motion to stay is considered.

12          THE COURT:  And, what, I understand the endpoint

13   of the IPR is going to almost certainly be November.  Where

14   are we right now?  Did the owner file a response yet?

15          MR. MODI:  That is a good point, Your Honor.  I

16   was going to go there next.

17          THE COURT:  Yes.

18          MR. MODI:  So their response was actually due

19   this week.  They sought a two-week extension from us which

20   we gave them.  So right now their response is due, it's

21   about a two-week extension.  It is due on February 18th.

22   In fact, if you look at this litigation compared to the

23   IPR, as I mentioned earlier, not much has happened in this

24   litigation, Your Honor.  Certainly, no documents have been

25   produced.  There have been no depositions that have been

1    noticed.  There have been no infringement contentions, no

2    claim construction exchanges or briefing, no decision on the

3    pending motion to dismiss, trial isn't scheduled for another

4    18 months.  And when you compare that with the IPR, their

5    patent owner response is due on February 18th, our reply is

6    due in May, and then it's set up for an oral hearing before

7    the PTAB in August.

8              So we will for sure have a final decision by the

9    PTAB in November, so I think this Court will only be staying

10   this case for a few months.

11             THE COURT:  Is the PTAB applying the *Phillips*

12   standard to the extent this claim construction issues in

13   this IPR.

14             MR. MODI:  No, Your Honor.  So this was filed

15   under the old standard, under the BRI, but I think what you

16   are getting at from a claim construction perspective, even

17   though we do not offer any terms for construction in our

18   petition, as Your Honor is very well aware, things do

19   happen in the course of these proceedings, and we do think

20   additional prosecution history will be created which will

21   benefit the parties and this Court.  So we do think, we

22   think this is one of those cases that is a classical case

23   for why there should be a stay under the factors that this

24   Court considers.

25             THE COURT:  All right.  You have answered my

1    questions.  Anything more you want to say?

2              MR. MODI:  The only other thing I will add, Your

3    Honor, is just going back to the undue prejudice factor,

4    just going to the competitive, the relationship with the

5    parties.  The other thing I wanted to mention is again as

6    Your Honor is very well aware from the *454 Lifesciences* case

7    for the undue prejudice case, you look at four subfactors.

8    The other three are:  the timing of the request for review,

9    the timing of the request for a stay, the status of the

10   review, and, of course, the last one we talked about, the

11   relationship between the parties.

12             Infineum largely ignores of the first three

13   factors, the first three subfactors in its opposition.  And

14   we believe, rightly so, we promptly petitioned for the inter

15   parties review here within two months of getting sued and

16   ten months before our one year bar date.  All claims are in

17   play, as Your Honor knows, from our perspective.

18             We asked Infineum to agree to a stay multiple

19   times.  In fact, I raised this at the CMC with Judge Burke

20   and sought his guidance as to when we should seek the stay.

21   And he told us that we should file for the stay assuming

22   the IPR is granted; and we did that six days after the IPR

23   petition was granted.  And then, of course, the IPR is

24   proceeding at a very fast base, and they're spitting a final

25   decision by November.  So unless Your Honor has no more

1   questions?

2           THE COURT:  Just one.  You are not contending

3   there is unfair prejudice to you if I don't stay, are you?

4           MR. MODI:  Your Honor, I think in this case,

5   again, going back to the competitive relationship, we do

6   believe.  And if I can refer the Court to the *Husqvarna*

7   case.  This is one of those cases where each party is

8   aggressively pursuing its options, right?  They are coming

9   to this Court for relief.  We went to the PTO and, in this

10  case, we think we would be unduly prejudiced given the PTAB

11  has instituted the IPR proceeding with respect to all

12  claims.  And we would ask that the Court to put in a stay

13  even if it only stayed it through November.

14          THE COURT:  All right.  We'll save the rest of

15  your time for rebuttal.

16          MR. MODI:  Thank you, Your Honor.

17          THE COURT:  We'll hear from plaintiff.

18          Good morning.

19          MR. STRATE:  Good morning, Your Honor.

20          THE COURT:  Good morning.

21          MR. STRATE:  So obviously, as Mr. Modi mentioned,

22  there are three factors for the Court to consider there:  the

23  degree of prejudice, whether or not there is going to be a

24  simplification of the issues, and what stage of litigation

25  we're at.

1          Infineum recognizes that while this case is not

2     at the very beginning, and there has been some work done on

3     this case, we're not at a point in which this is typically

4     associated with being in an advanced stage.  We haven't done

5     a claim construction.

6              THE COURT:  They really did petition very quickly.

7              MR. STRATE:  We don't claim that they delayed in

8     filing the petition or delayed in requesting the stay.  As

9     Mr. Modi mentioned, Judge Burke did advise they wait until

10    there is a decision to institute before requesting the stay.

11    So we're not claiming there is going to be prejudice because

12    of some form of undue delay based on Oronite's either filing

13    of the petition or requesting or filing this motion.

14             I think that this case really boils down to

15    whether or not there is going to be a simplification of

16    the issues and whether or not the fact that, as defendants

17    acknowledge, Infineum and Oronite are direct competitors

18    in a fierce market, in a highly competitive market, whether

19    that warrants against granting the stay which many times

20    that, in and of itself, can justify not granting the stay.

21             THE COURT:  All right.  Let's unpack that

22    because it's admitted that you are fierce competitors

23    although there are other competitors in the market.

24             MR. STRATE:  There are principally four players

25    in the market.  It's not a large 16 player, 23, 40, 50

1    player market; there is four players.  There is Infineum,

2    there is Oronite, there is Afton, and there is Lubrizol.

3              THE COURT:  Articulate as best you can why

4    putting this case on hold for the nine months until November

5    is going to unfairly harm your client.

6              MR. STRATE:  Well, I think the reason why we are

7    here, as Mr. Modi noted before, 12 years ago, Infineum did

8    give Oronite notice of the '685 patent.  That is true.

9    However, things changed.  Oronite's behavior changed.  The

10   products appear to have changed from Infineum's perspective.

11             Natural disasters occurred.  Chevron is

12   primarily based out of the Gulf area.  There have been

13   numerous hurricanes and other natural disasters which

14   appears to have affected Oronite's presence in the market,

15   but things changed.  New products come along and Infineum

16   begins to identify Oronite as infringing its patents, and

17   that is.  When it did that, Oronite's level of competition

18   with Infineum grew; and that is why we're here right now.

19   That is why, the question is why are you suing now?  That is

20   why Infineum is suing Oronite.

21             THE COURT:  What happened in 2012?  Because

22   evidently you reiterated that you thought they infringed in

23   2012.

24             MR. STRATE:  We believe there is some degree of

25   infringement back in, back to 2012.  We don't know the full

1    extent.  We don't know the size.  But that is, that is based

2    on the products that are out there right now, but we don't

3    have a sense of the scope, essentially like the quantity or

4    the volume or significance of the infringement.

5         THE COURT:  I'm not suggesting you have to file

6    for a preliminary injunction, but what is -- I'm trying to

7    find the undue prejudice to your client.  You're still

8    going to have your damages claim.  Obviously, damages are

9    compensable by money in a situation like this.  The market

10   has changed, whatever.  It's been 12 years since you first

11   identified the defendant as potentially harming you by

12   infringing your patent.  In that context, it's hard to see

13   why a nine month pause is really going to be all that

14   damaging, so help me with that.

15        MR. STRATE:  What Infineum seeks right now is

16   Oronite growing presence in the market, increased

17   competition, and taking sales away from Infineum.

18        THE COURT:  That is happening right now.

19        MR. STRATE:  That is happening right now.

20   Infineum is losing profits because of Oronite's conduct,

21   and Infineum has informed Oronite as part of the case, that

22   we're seeking lost profits which sometimes is a factor that

23   can be considered in determining whether or not a stay is

24   warranted.  Typically, when it is the case that you are

25   dealing with an NPE or the parties only seek a reasonable

1    royalty, that factor would weigh against granting a stay.

2    Here, we are seeking --

3              THE COURT:  The lost profits you can ultimately

4    seek at trial.

5              MR. STRATE:  Certainly.

6              THE COURT:  Are they going to be any different

7    if we pause this case for nine months than if we stay on the

8    current schedule?

9              MR. STRATE:  Larger.

10             THE COURT:  They will be larger.

11             MR. STRATE:  They will be more.  Absolutely.

12             THE COURT:  Is there any concern about

13    collectability?

14             MR. STRATE:  At this stage, we don't have that

15    concern.

16             THE COURT:  All right.  You can go on.

17             MR. STRATE:  Now, with respect, the other issue

18    is simplification of the issues.  As the Court has picked

19    up, as we have highlighted in the decision to institute the

20    petition, the Board did not state a reasonable likelihood

21    that claims 5 and 12 are invalid.  That was obviously

22    noticed by Oronite and Infineum also.

23             It is apparent that Oronite wanted to clarify

24    that issue with the Board, and they approached the Board and

25    pointed out that Section E, which is of their petition,

1    which deals with claims 5 and 12 did not discuss those two

2    claims, and they requested an errata.  They believed that

3    it was a typographical error.  That is how they phrased it

4    to the Board.  They requested an errata and the Board did

5    respond and did issue an errata but did not modify Section

6    E.  It did not modify its original decision to say that

7    claims 5 and 12 are likely invalid.  All it stated was

8    claims 5 and 12 are a part of the petition.  I mean are part

9    of the decision to institute the IPR.  It's going to be

10   reviewed.

11            But that was obvious.  That was the case because

12   *SAS* had come down before.  And if the PTAB was ever going to

13   institute the IPR, it had to consider it, but that was just

14   more of in order to change jurisdiction.

15            THE COURT:  Tell me how the case looks if it's

16   just on 5 and 12 versus all 20 of the claims.

17            MR. STRATE:  We don't think it would be

18   materially different, at least in terms of fact discovery.

19   There is a potential that it could come down, it could be

20   different once we get into expert discovery because then

21   the experts might have to consider additional claims.

22            THE COURT:  So I don't know a lot about the

23   technology yet, but just reading 5 and 12, they seem pretty

24   narrow.  They've got these sort of ranges.  Is it really,

25   can you reasonably say all the same products are going to

1    be at issue and the discovery is going to be as extensive?

2            MR. STRATE:  Based on our understanding, all

3    products are subject to claim 12.

4            THE COURT:  All.

5            MR. STRATE:  All products are subject to claim

6    12, and we believe that all of the current products are

7    subject to claim 5.

8            THE COURT:  Regardless of whether we stay or

9    not, what is the plaintiff's position, if you have one, on

10    whether this case is going to go forward on claims that

11    don't emerge from the IPR?  Let's just say for argument's

12    sake a particular dependent claim is out but you still have

13    a right to appeal that to the Federal Circuit.  If I have a

14    case going forward, is that claim out of our case or do you

15    reserve the right to proceed on that claim?

16            MR. STRATE:  If another dependent claim was to

17    be found valid?

18            THE COURT:  Was to be found invalid is my

19    question.

20            MR. STRATE:  If the claim was to be found

21    invalid at the final written decision stage is what you are

22    asking?  We would certainly consider whether or not it's

23    worthwhile to pursue that claim here or just to move forward

24    on the claims that have 5 and 12 and any other claims that

25    were confirmed in terms of validity.  And we may decide

1   it is not worth pursuing those additional claims in this

2   litigation.

3              THE COURT:  I assume it's the same answer for

4   independent claim 1?  That is, if claim 1 is invalidated in

5   the IPR, you are not ready to say it is out of the case?

6              MR. STRATE:  Absolutely.  Yes.  We can't

7   affirmatively say at this stage it is out of the case, but

8   we would certainly consider that.

9              THE COURT:  What about the possibility of an

10  amendment?  Is that a possibility?

11             MR. STRATE:  It is not.  Oronite's counsel has

12  asked us whether or not we intend to file a motion to amend;

13  and after consideration, we've decided not to.  Infineum

14  will not.

15             THE COURT:  Did Mr. Modi get it right on the

16  status of the IPR?  You asked for a brief extension and will

17  be filing your response.

18             MR. STRATE:  That's correct, yes.

19             THE COURT:  Do we know yet whether there is

20  going to be claim construction issues raised in the

21  response?

22             MR. STRATE:  From our perspective, it does not

23  appear so.  As Mr. Modi indicated, they have not identified

24  any claim construction issues for the Board.  We don't

25  believe that there is going to be a claim construction issue

1    either.  So at this stage, we don't anticipate that.

2             THE COURT:  Now, it is true, though, we're

3    getting additional prosecution history from the PTAB.  You

4    never know, they may say something with claim construction.

5    There will be some degree of estoppel.  Why shouldn't I

6    think of that as potentially significant simplification for

7    us?

8             MR. STRATE:  I think the prosecution history

9    tends to have more of a significant thrust when there is

10   claim amendments in order to overthrow/overcome rejection to

11   the prior art.

12            Argumentative prosecution history tends to be

13   given less weight than the claim amendments.  There is not

14   going to be a claim amendment in this case, so to the

15   extent there could be prosecution history, it would be

16   argumentative prosecution history which is not as -- that is

17   not relied upon significantly by courts.

18            THE COURT:  Okay.  You have got gone through all

19   of my questions, but you have some time if you want to say

20   some more.

21            MR. STRATE:  One thing I would like to, I

22   believe we pointed this out to the Court and I think it

23   is worth raising here is because of *SAS*, we're dealing with

24   a new situation.  In the past, the courts have considered

25   stays.  They have either -- normally, all of the claims have

1    been instituted or the court has to weigh whether or not it

2    is worth a stay if some of the claims are instituted but not

3    all of them.   But because of *SAS*, all the claims are in the

4    IPR.

5              We think that this is kind of analogous to a

6    situation in which a court would consider whether or not to

7    maintain a stay after the Board has expressed an opinion

8    that one or more claims have not been shown to be invalid.

9              Routinely courts, when pressed with the idea of,

10   you know, the stay should be lifted because the Board has

11   expressed that a different one claim has not been shown

12   invalid, the courts typically will lift the stay and say

13   it is not warranted maintaining that stay.   Typically, the

14   petitioner will argue, well, there is always the possibility

15   that the circumstances will change and the Federal Circuit

16   will reverse the Board or the Board will reconsider its

17   decision and the claim will ultimately be invalid.

18             On many occasions, District Courts say, well,

19   that is a possibility, but that is really speculative, and

20   we're not going to maintain a stay based on the possibility

21   that the Board changes its mind.

22             As I indicated before is the case, the Board has

23   not stated that claims 5 and 12 are likely invalid even

24   though Oronite requested them to do so.   The Board declined

25   that request.   So there is the possibility that they might

1    change their mind, but in many circumstances, in the context

2    of a stay, courts do not maintain the stay based on that

3    possibility.  And I think that consideration is worth taking

4    into account in this circumstance here.

5              THE COURT:  Okay.  Is there anything else?

6              MR. STRATE:  That's it, Your Honor.  Thank you.

7              THE COURT:  Okay.  Great.  Thank you.

8              Mr. Modi, any rebuttal?

9              MR. MODI:  Your Honor, just a few points.

10             Going back to the prejudice prong.  Mr. Strate

11   talked about there is harm to them.  There is newly found

12   harm.  We don't have any declarations, we don't have any

13   proof that that there are all these alleged harms.  I think

14   the important point here is damages can compensate them for

15   any alleged infringement.  And, again, there was a 12 year

16   delay in filing this suit.

17             With respect to claims 5 and 12, Your Honor,

18   going back to claims 5 and 12, if they felt that both of

19   those claims were out, they would not have deposed our

20   expert.  So there was a deposition of the expert, I forgot

21   to mention in my openings, on January 25th.  As I mentioned,

22   the parties have only been focusing on the IPR and not on

23   this litigation.  And they actually asked our expert about

24   claim 12.  If they were so sure that claim 12 was out of the

25   review, they certainly would not have spent any time

1    questioning our expert with respect to claim 12.

2              THE COURT:  That was a definite deposition in

3    connection with the IPR.

4              MR. MODI:  Yes, Your Honor.  So there was a

5    deposition on January 25th.  I think you do have to look at

6    the words of the decision, if you go back and look at the

7    IPR decision.  And this is at page 5 and -- let me just get

8    you the right pages -- so pages 2 and 20 of the IPR decision

9    that is at DI 50, Exhibit B.  The Board made it very clear

10   that it instituted review on all claims and all grounds set

11   forth in the petition.  If there was any doubt, it obviously

12   should have errata that claims 5 and 12 are in the case.

13             THE COURT:  Right.  I don't understand the

14   dispute to be that they're involved in the petition or the

15   PTAB proceeding.  It's whether or not the PTAB has ever said

16   there is a reasonable likelihood that they would invalidate

17   5 and 12.

18             MR. MODI:  Right.  And I think at most, Your

19   Honor, perhaps you can give them that the PTAB stayed the

20   other -- neither, those claims, that we haven't shown that

21   there isn't a reasonable likelihood that we would have

22   prevailed with respect to claims 5 and 12.  And I think if

23   you look at the record and if you were to go back and we

24   tried to parse this in our briefing, if you look at pages 17

25   to 19 of the decision when the Board discussed grounds for

1    where these claims 5 and 12 were, should have been discussed

2    in the Board's decision, the Board actually cited to the

3    petition, pages 55 through 65.  And those are, you can find

4    that in DI 56, Exhibit M.  If you look at those pages, they

5    squarely address claims 5 and 12.  And the Board in its

6    institution decision on pages 17 to 19 says it agreed with

7    the analysis we had with respect to the dependent claims.

8         So we think at most what we get here is perhaps

9    the PTAB did not make an explicit statement that those --

10   that we had met our burden of showing there is a reasonable

11   likelihood of success with respect to those two claims.

12   But, again, the PTAB didn't say either way, but we believe

13   that we did meet our burden.

14        Like I said, I have had cases where post-*SAS* --

15   and the PTAB here didn't mention *SAS* at all, and they are

16   the ones bringing this up -- and like I mentioned, post-*SAS*

17   I had cases that have been brought into the proceedings

18   where the claims were out of the case pre-*SAS* and they were

19   in the case post-*SAS* and they were found to be invalid at

20   the time of the decision.

21        I'll just mention one last point, Your Honor.  I

22   don't think this is a case where plaintiff has been behaving

23   like a competitor that has been hurt.  This comes from this

24   Court's *Boston Scientific v Cook* case.  And what I mean by

25   that is if you look at over the last 12 months in terms of

1    what happened in this litigation, plaintiff hasn't been

2    aggressive in moving this litigation along.  So another nine

3    month stay in this case or a nine month stay in this case

4    would really not -- certainly will not be unduly prejudicial

5    to them.  So we ask that this Court stay this case.

6              Unless you have any other questions, that's all

7    I have.

8              THE COURT:  No other questions.  We'll take a

9    short recess, and I'll come back and give you a decision.

10             (Brief recess taken.)

11             *      *      *

12             (Proceedings reconvened after recess.)

13             THE COURT:  Have a seat.

14             All right.  Well, the briefing was helpful and

15   focused.  The argument was very good.  You answered all

16   of my many questions.  The motion to stay pending an IPR

17   presents a discretionary issue for the Court and I think

18   it's best that I just give you a decision.

19             So having considered the facts and circumstances

20   of the law and for reasons I'm going to try to articulate,

21   I have decided to grant the motion to stay.  I will stay

22   this case until at least two weeks after the final written

23   decision on the IPR.

24             I have considered the factors that are typically

25   considered:

1                   Whether or not a stay will simplify the issues

2     in question and for trial.

3                   Whether a stay would unduly prejudice or present

4     a clear tactical disadvantage to the non-moving party.  And,

5                   Whether discovery is complete and a trial date

6     is set.

7                   Let me touch on all three of those factors.  I

8     find they all favor a stay under the circumstances here.

9                   First, in terms of simplification, as we know,

10    the PTAB has found a reasonable likelihood that at least

11    one of the claims that are being asserted in this case is

12    invalid.  Per the *SAS* decision, they will be reviewing all

13    20 of the claims that are in the patent and, as I understand

14    it, are currently asserted in our case.

15                  As a result, we will necessarily get more

16    prosecution history.  There will be some estoppel which

17    should reduce the invalidity disputes the Court has to deal

18    with if the case goes forward.

19                  There may yet be some additional claim construction

20    that will occur in connection with the proceedings before the

21    PTAB, though I recognize there is no claim construction

22    dispute actively being litigated in the IPR as of yet.

23                  I do also recognize, by the way, that the PTAB

24    is applying the BRI, the Broadest Reasonable Interpretation

25    claim construction approach as opposed to the *Phillips*

standard which we apply here in court, and so arguably

the potential simplification of any additional claim

construction coming out of the IPR is somewhat reduced from

where it would or will be ultimately when the PTAB starts

applying the *Phillips* standard.  But, nonetheless, I think

overall, the stay here is going to promote a simplification.

We have not yet seen infringement contentions,

but I do believe it's quite possible that the stay will

likely lead to invalidation of at least one or more claims

and, therefore, I think it is quite likely that the scope

of this case will be somewhat narrowed in terms of the

accused products and potentially in terms therefore of the

discovery, all of which may ultimately simplify the trial.

It's also always possible that all the claims

may by invalidated, and it's possible therefore the case may

go away entirely.

There is the dispute about claims 5 and 12, what

their status is, what the PTAB's preliminary views of those

two claims are.  I have considered that dispute.  It's sort

of a murky situation particularly in the post-*SAS* world.

The point to me is that, overall, I believe a

stay will promote simplification.  Five and 12 are narrow

claims or at least based on the limited understanding I have

of the technology at this point, they appear to be narrow

claims.  They have to be what seem to be defined numerical

<table>
<tr><td>1</td><td>ranges.   There is no showing as of yet that defendants</td></tr>
</table>

1    ranges.   There is no showing as of yet that defendants

2    products necessarily infringe those claims but I recognize

3    the plaintiff is asserting that they do.   But my expectation

4    again will be that even if 5 and 12 survive that I will have

5    a simpler case than the current case I have which extends to

6    claims 1 through 20.   So overall, the simplification factor

7    favors a stay.

8              So, too, does the factor of whether a stay will

9    cause undue prejudice or true tactical disadvantage to the

10   plaintiffs.   I find that a stay of nine months roughly

11   will not unduly prejudice the plaintiff or tactically

12   disadvantage the plaintiff.   It's true I recognize the

13   parties are competitors so certainly there is some prejudice

14   to the plaintiff.   The plaintiff would prefer to go forward

15   with litigation.   That is where they chose to bring this

16   fight.   But just being competitors does not automatically

17   mean that we deny a stay under these circumstances.

18             The prejudice here I find is not undue for the

19   following reasons or at least the following reasons.   Quite

20   notably, the plaintiff first notified the defendant of

21   possible infringement of this patent about 12 years ago

22   and then in and around 2012, again, told the defendant that

23   it may be infringing this patent but, nonetheless, the

24   plaintiff waited years thereafter to sue the defendant.

25             Until today, there was no explanation that I

1    have seen for the delay in the filing suit.  Today's

2    explanation seems to have to do with there have been changes

3    in the market, increased efforts in success by the defendant

4    to compete with the plaintiff, additional lost profits from

5    the plaintiff.  That all may turn out to be true, but I

6    don't have any evidence of that at this point.

7           But as importantly as all of that, the plaintiff

8    contends it has a lost profits damages claim.  That claim

9    presumably will keep growing during the stay that I am

10   imposing.  And there is no reason to think that at the end

11   of all this, if the plaintiff is correct, that some claims

12   survive the IPR and the plaintiff can prove that the accused

13   products infringe, there is no reason to think plaintiff

14   won't be able to prove its lost profits damages and then

15   the defendant will pay them.  The bottom line is there is

16   no reason to find that whatever harm is resulting from the

17   stay is not compensable by money damages.

18          Notably, there are other competitors in the market

19   as well.  All else being equal, it is less likely that you

20   would stay a case where there the only two competitors are the

21   plaintiff and the defendant but that is not the case here.

22          Also, the other considerations the Court

23   typically considers at the undue prejudice analysis, the

24   other subfactors all, without dispute, favor a stay here.

25   That is, the defendant sought IPR review very quickly only

1      about two months after suit was filed.  This is not a case

2      in which the defendant either tactically or with lack of

3      diligence waited 11 to 12 months before seeking IPR review.

4      They moved very quickly to seek that IPR review.

5              They then sought a stay within a week of the

6      decision to institute by the PTAB which is all consistent

7      with the guidance the Court had provided the parties.  And

8      we know that it is almost certain that the IPRs will be

9      completed by November of this year which, again, is only

10     about nine months away.  I have not been asked to stay the

11     case at this point beyond November or beyond the conclusion

12     of the IPRs, and I'm not at this point doing that.

13             If anyone is going to seek a stay pending an

14     appeal from whatever happens at the IPR, you are going to

15     have to ask for it and we will evaluate it based on the fact

16     and circumstances at that point.  There is absolutely no

17     reason to think that because I'm staying the case for nine

18     months, I'm signing up for another 12 months beyond that.

19     It may happen but quite likely will not happen.

20             Next, I have considered the status of this case.

21     Is discovery completed?  No, of course it isn't.  It is in

22     the early stages.  Has a date set yet?  Yes, a trial date

23     is set.  It is some time into the future.  I believe it is

24     August of 2020.  Overall here, the litigation is in

25     relatively early stages.  I have entered a schedule.

1      Discovery has barely begun.  We did resolve one protective

2      order dispute.  It's not like we haven't done anything but

3      we haven't done that much and the overwhelming work for the

4      party and for the Court lie ahead.

5               Importantly here, just to reiterate what I said,

6      it is a nine month stay.  Trial is currently scheduled for

7      about 18 months away.  You all are going to be ordered to

8      report back to me within two weeks of whenever the IPRs are

9      completed.  That is likely to be by November of 2019.

10              Based on the fact and circumstances at that

11     point, including what happened in the IPR, the plaintiff

12     thinks we need to move very expeditiously towards trial.  I

13     imagine I could get you all on my calendar by the end of

14     2020.  It probably wouldn't be August but it could be near

15     the end of 2020.

16              I'm not saying I will do that, but if the

17     plaintiff is really being hurt, 12 months to take this

18     case from where it is now all the way to trial is not that

19     outrageous.  So if that is what the plaintiff asks to do and

20     it is justified under the circumstances, the reality is we

21     may end up only losing three, four, five months from the end

22     date of this case.

23              I have considered, as I often do, whether there

24     would be undue prejudice to the defendant if I did not stay

25     the case.  I do not find that, so there is a lot of

1    negatives there, but the defendant did not persuade me it

2    would be unfair or unduly prejudiced to the defendant if I

3    denied today's stay request.  I recognize that would require

4    the parties to litigate in two different forums but the

5    defendant chose to open up the second front in this battle,

6    and so I don't find that to be an unfair prejudice had it

7    gone the other way.

8              Overall, the three main factors favor a stay,

9    so the Court will enter an order granting the motion to stay

10   requiring you to report back within two weeks of when IPRs

11   are over and the pending motion to dismiss is going to be

12   denied without prejudice to renew if, and when, the stay is

13   lifted.

14             Any questions about any of that?

15             MR. MODI:  No, Your Honor.  Thank you.

16             THE COURT:  Any questions?

17             MR. STRATE:  No, Your Honor.  Thank you.

18             THE COURT:  Okay.  Thank you all for the helpful

19   argument.  We will be in recess.

20             (Oral argument hearing ends at 10:31 a.m.)

21

22        I hereby certify the foregoing is a true and accurate
     transcript from my stenographic notes in the proceeding.

23

24                      /s/ Brian P. Gaffigan
                      Official Court Reporter
25                      U.S. District Court